UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| PLAINTIFF ) | |
| ) | |
| v. ) | CRIMINAL ACTION NO. 3:23-cr-23-DJH |
| ) | |
| LEVELLE O'BANNON (1) and ) | |
| JENNIFER O'BANNON (2) ) | |
| DEFENDANTS ) | |

\* \* \* \* \* \* \*

<u>**LEVELL O'BANNON'S SENTENCING MEMORANDUM FOR SENTENCING HEARING ON FEBRUARY 22, 2023, AT 10:30 A.M.**</u>
*ELECTRONICALLY FILED*

Comes Levelle O'Bannon, by counsel, Nick Mudd, and respectfully submits to this Honorable Court a Sentencing Memorandum in support of law and argument, in anticipation of the Defendant's Sentencing Hearing set to be heard on the 22nd day of February, 2024, at 10:30 A.M., in the United States District Court Western District of Kentucky at Louisville, in front of the Honorable Judge David J. Hale.

**PROCEDURAL AND FACTUAL BACKGROUND**

The facts from the Plea Agreement state Levelle O'Bannon knowingly possessed, in and affecting commerce, two (2) firearms and ammunition, with knowledge that he had previously been convicted of a felony. ***Plea Agreement at 2:3***. On June 23, 2020, ATF executed a federal search warrant at the O'Bannon residence. ***Id***. During the search, agents located a Smith & Wesson 9mm pistol and a Ruger 9mm rifle in the shared master bedroom. ***Id***.

On November 29, 2023, Levelle pled guilty, pursuant to Indictment 3:23-CR-23-DJH, to one (1) count of Possession of a Handgun by a Convicted Felon, in violation of ***18 U.S.C. § 922(g)(1)*** and ***924(a)(2)***. He now stands before this Court to be sentenced on the single count.

I. **SENTENCING ENHANCEMENTS AND REDUCTIONS OF SPECIFIC OFFENSE CHARACTERISTICS**

**(a) "Use of a Firearm in connection with another felony offense" Does Not Apply**

A four-level enhancement pursuant to **USSG § 2K2.1(b)(6)(B)** was added to the base offense level in the PSR for the claim that the Defendant "used or possessed any firearm or ammunition in connection with another felony offense." **PSR at 9:29**. The Defendant objects.

**USSG § 2K2.1(b)(6)(B)** states: "[If the defendant] used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels." For the enhancement to apply, proof must be provided by a preponderance of the evidence to the Court that Levelle used or possessed a firearm on April 15, 2020, in connection with another felony offense. While he was charged in Jefferson District and Circuit Court, the charges were ultimately dismissed on June 6, 2022, over eight (8) months prior to the federal indictment. No further charges have been sought in that incident in either State or Federal jurisdiction as it pertains to "another felony offense."

The facts demonstrate that on April 15, 2020, Levelle's daughter, Moriah E. O'Bannon, was assaulted and held against her will by her boyfriend at the time, Mr. Andrew Bradly. Mr. Bradly was ultimately charged in that incident with felony Unlawful Imprisonment in the First degree and Assault 4th Degree Domestic Violence. The officer's citation from that incident states: "Officer dispatched to 946 S. 25th Street on a domestic violence report. Per the victim [Levelle's daughter], the listed subject, Andrew A. Bradley, had shoved and pushed the victim into a wall causing visible injury to her forehead. The listed subject also pushed the victim in the chest with his hand causing pain to the victim. The victim had complaints of pain to her head and

chest from the incident. The listed subject also had locked the victim in the basement and refused to let her out. The listed subject knowingly and unlawfully restrained the victim under circumstances which exposed her to a risk of serious physical injury." (See Defense Exhibit #1).

Levelle and Mr. Bradley had known each other for several years and had a close relationship. Andrew had been like a son to Levelle. After the domestic incident on April 15, 2020, Levelle went to Andrew's residence to speak with him. Andrew was aware that Moriah had called the police and filed an EPO, information which he no doubt had shared with his family.

When Levelle arrived and stepped out of his vehicle, Andrew Bradley's father, Mr. Aaron Bradley, immediately confronted Levelle and began yelling. Aaron, who was intoxicated at the time, pulled out a handgun and began making threats towards Levelle. Andrew's mother then came out of the house and calmed Aaron down and got him to walk away from the situation. Moments later, Aaron returned and began yelling once more, and pulled the firearm back out. Levelle tried to calm Aaron but to no avail. Aaron began discharging the firearm. One of the rounds struck Levelle in the leg. Levelle fled, and in the process retrieved his handgun and fired a single shot to stop Aaron from pursuing him. No one else was struck by any gun fire except Levelle.

Levelle continued to run until he could get to safety. He discarded the firearm, and a good Samaritan helped him. Levelle's keys and cell phone were still in his vehicle. A family friend was contacted and retrieved Levelle from the good Samaritan's home. Levelle could tell there were police cars in the area, so he approached them, still wounded, to tell them what had happened. As he approached the area, Aaron and Andrew began yelling that Levelle fired on them. Levelle was immediately arrested and taken into custody. He noticed upon his arrest that his van

had also been shot up and had multiple bullet holes. Levelle was taken to UL Hospital by ambulance and treated for a gunshot wound. He was then taken to the county jail. Andrew was also arrested for the domestic incident. Andrew later pled guilty to a domestic violence assault charge from the April 15, 2020, incident.

The Jefferson County Commonwealth Attorney's Office chose not to proceed on the charges nor prosecute the facts and circumstances of the case. The charges against Levelle were dismissed on June 15, 2022, over eight (8) months prior to this indictment. No criminal convictions whatsoever arose from that incident. Such facts should not be used against Levelle as "another felony offense," because there was not another felony offense. Levelle was the person who was shot. There's no evidence that another felony offense was committed. And the Jefferson County Commonwealth's Attorney Office chose to not proceed and dismissed the case. Therefore there is no "other felony" that would allow this enhancement to have any applicability.

### (b) The Defense Would Request the Court Not Apply the Two-Level Multiple Firearm Enhancement

A two-level enhancement pursuant to ***USSG § 2K2.1(b)(1)(A)*** was added to the base offense level in the PSR for the claim that the offense involved between three (3) and seven (7) firearms. ***PSR at 9:28***. The United States agreed in the plea documents that the defendant possessed two (2) firearms in the present offense. ***Plea Agreement at 2:3***. Levelle would request the Court not apply the two (2) point increase, and this was the intention contemplated by the parties.

## II. THE DEFENSE REQUESTS LEVELLE BE GIVEN A VARIANCE PURSUANT TO THE FACTORS SET FORTH IN 18 U.S.C. §3553(a)

Courts have held that variances are not subject to the guideline analysis for departures. ***See, e.g., United States v. Grams***, 566 F.3d 683, 686-87 (6th Cir. 2009) ("In contrast to a departure, a 'variance' refers to the selection of a sentence outside of the advisory Guidelines range based upon the district court's weighing of one or more of the sentencing factors of *18 U.S.C. § 3553(a)*."). Courts may impose a variance outside of the guideline range after consideration of all relevant departure provisions. ***Gall v. United States, 552 U.S. 38, 49 (2007); see also supra note 11***. The ability to vary preserves district courts' ultimate ability to impose, regardless of what the guideline range is found to be, a sentence that it views pursuant to *18 U.S.C. § 3553(a)* is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." ***See, e.g., United States v. Ashburn***, 502 F.3d 313, 327 (3d Cir. 2007) (noting that the sentencing court, in the post-***Booker*** era, has the "discretion to craft an appropriate sentence falling anywhere within the range of punishments authorized by Congress."). Under ***Booker***, sentencing courts must treat the guidelines as just one of several sentencing factors set forth in *18 U.S.C. § 3553(a)*. Under *18 U.S.C. §3661*, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." The ability to vary preserves a district court's ultimate ability to impose a sentence that it views is "sufficient, but not greater than necessary" to serve the goals of sentencing in 18 U.S.C. § 3553(a), regardless of the guideline range. ***See, e.g., United States v. Ortiz-Pérez, 30 F.4th 107, 112 (1st Cir. 2022)*** ("It is the sentencing court's prerogative—

*indeed, its duty—to 'draw upon [its] familiarity with a case, weigh the factors enumerated in [section] 3553(a), and custom-tailor an appropriate sentence.' " (alterations in original) (quoting United States v. Flores-Machciote, 706 F.3d 16, 20 (1st Cir. 2013)))*. In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purpose.

Levelle takes full responsibility for his actions. He has availed himself of this Court, plead guilty, and will accept whatever consequences this Court deems appropriate. Levelle does request a variance based on the factors outlined below, and would inform this Honorable Court he intends to testify at his sentencing hearing to discuss these factors more in depth.

**(a) <u>NATURE AND CIRCUMSTANCES OF THE OFFENSE</u>**

    **1. <u>The Circumstances of Why Levelle Committed the Offense</u>**

Counsel and Levelle have had many discussions about why he felt the need to possess the firearms at issue in this case. Of specific importance are *when* the firearms were purchased—the height of the COVID-19 pandemic—on March 19, 2020.

Given the unknowns from the virus and uncertainty in the world at that time, many, including Levelle, were frightened of the future. Supply shortages, workplace closures, fear from illness and death, extreme social distancing, and news reports of overcrowded hospitals all led to scares of what the future may hold. There were times during that period that many felt, including Levelle, that Democracy was hanging by a shoestring, and self-preservation and safety outweighed rationale decision making.

Levelle became a convicted felon on April 28, 1994, almost thirty (30) years ago. He went over twenty (25) years without a firearm. Never owning one. Never touching one. Never possessing one. And he never committed another crime during the 25-year period leading up to

the present offense. Why obtain a firearm now? With the state of the world at that time and the societal uncertainty, Levelle felt it was a matter of self-preservation and self-protection for his family, his children, his wife, and himself. This doesn't negate his guilt. It doesn't excuse his behavior. But it does lend the Court context as to the nature and circumstances of the offense, which Levelle respectfully request this Honorable Court take into consideration.

2. **The Circumstances Surrounding Expungement of the 1994 Felony Conviction**

As a matter of law, but for Levelle failing to get the convictions from the 1994 felony case expunged, he would have been able to legally own, purchase, and possess the firearms at issue in this case. He takes responsibility for his actions and has pleaded guilty, but it would be unjust not to consider this fact into the Court's ultimate sentencing determination.

Class-D felony expungement became available in Kentucky for the first time in 2017. At that time, only a specific list of Class-D felonies was eligible for expungement. Seeking to rid himself of the felony case that had haunted him, on October 25, 2017, Levelle went to the Administrative Office the Courts (AOC) at 600 W Jefferson Street in Louisville, KY to seek expungement of his record. While there he spoke with the AOC clerks who assisted him in pulling his prior record. Attached to this memo is the original receipt and paperwork from that transaction over six (6) years ago. (See Defense Exhibits # 2 and #3). The clerks at AOC reviewed the record with him and informed him that under current Kentucky law at that time, his felony case could not be expunged.

The Kentucky Legislature again amended the expungement laws in 2019. This time the list of eligible felonies was expanded to include nearly all Class-D felonies, including the charges Levelle was convicted of in 1994. Unfortunately, Levelle failed to timely file the necessary paperwork to expunge his felony record.

Counsel wanted to be certain it could properly be represented to this Honorable Court that the felonies which are the basis for the indictment were in fact expungement eligible, so counsel filed for an expungement eligibility certification with the Kentucky State Police. On August 9, 2023, that expungement eligibility certification was returned. On this certification all the charges for the 1994 case are and have been since 2019, eligible for expungement. (See Defense Exhibit #4).

Levelle was originally charged in Jefferson District Court with the firearms offense that forms the factual basis of this indictment on April 15, 2020. The case was indicted but later dismissed on June 15, 2022. Had Levelle filed the for expungement certificate on or after this date, and had it expunged between then and February 21, 2023, the felony record of Levelle would have been non-existent, even after the offense had occurred. The essential element of a certified felony conviction would not be possible to prove.

This does not alleviate Levelle's knowingly disregard for the law. He must be held accountable. It does, however, mitigate the need for society to vindicate his behavior, since the legislature in Kentucky had agreed that someone who has fulfilled all the conditions present should be allowed to have their felony charge expunged. This specifically pertinent under *18 U.S.C. § 3553(a)(2)(C)* where the Court is asked to consider the danger to the public.

**(b) <u>HISTORY AND CHARACTERISTICS OF LEVELLE; EDUCATIONAL AND VOCATIONAL SKILLS</u>**

Levelle grew up in the Southwick housing projects in Louisville, KY. He was raised by a single mother, who had three (3) other children, all by different fathers. His mother, who had mental health issues, moved him and the other children around frequently, never having a stable home.

His mother eventually moved them to Owensboro, KY. Around the age of thirteen (13) Levelle took his first drink of alcohol, which quickly became an addiction. At age fifteen (15), after disagreements over religion, his mother kicked him out of the home and sent him to live with his grandmother. Shortly after, Levelle began abusing alcohol even more regularly, and eventually began using cocaine and crack cocaine.

As Levelle's behavior became more out of control, things came to a head at age nineteen (19) when he received his one (1) and only criminal conviction, prior to the present case. Levelle partook in a robbery as a getaway driver. He was eventually prosecuted and convicted in Jefferson Circuit Court and sentenced to probation in April of 1994. A short time later he violated by smoking crack cocaine and using alcohol and was sent to serve his prison sentence.

Levelle was given a second chance when he was shock probated several months later. Once released from prison, Levelle changed his life and made the most of this opportunity. On November 2, 1996, he had what he describes as "an experience with God" and began attending Tabernacle Missionary Baptist Church where he began his path to fight for his sobriety. He completed an intensive outpatient program at the former Jefferson Alcohol & Drug Abuse Center (JADAC). He also felt a calling to be a preacher and became an ordained minister in 1997. (See Defense Exhibit # 5). He worked at a local restaurant to make ends meet as best he could, being a convicted felon and on probation.

In 1999 Levelle was hired at Jeff Boat. (See Defense Exhibit #6). He worked his way up the ladder and completed welding school. He eventually became a Master Welder, where his primary job was pipe welding. Around 2000 Levelle completed his probation. Since then, he has had no further criminal issues until the present case.

In 2006 he made the decision to start his own home remodeling business, Integrity Real

Estate. (See Exhibit #7). At that time, he also began purchasing investment rental properties, at one time owning up to eleven (11). At its peak, his remodeling and real estate company had approximately twenty-five (25) employees. He continued to advance in the remodeling business and educate himself, completing an "Advance Estimating Using Formulars from Foundation to Finish" course and a "Window Installation" course with the Home Builders Association of Louisville. (See Defense Exhibit #8).

Levelle, despite switching to a new church, still maintained an active presence in his spiritual life. In 2008 he did a two (2) week mission trip to India. (See Defense Exhibit # 9). He still maintains an active role to this day in his church.

With the real estate market crash in the early 2010s, Levelle eventually had to lay off all of his employees and got out of real estate investing. From 2012 to 2015, Levelle attended KCTCS (formerly Jefferson Community and Technical College) and become HVAC certified. In May of 2014 he received a certificate as an Environmental Control System Servicer and as a Environmental System Repair Helper. In December of that year, he also received a diploma as a Heating, Ventilation, and Air Conditioning Mechanic, and a certificate as a Domestic Air Conditioner and Furnace Installer. (See Defense Exhibit # 10). He eventually went to work at Air Serve where he started his career as an HVAC technician.

Levelle had continued success working with HVAC systems, including obtaining his Journeyman's license for the HVAC in 2017, obtaining an additional HVAC certification in 2018, passing the EPA Section 608 Type Exam for HVAC Repair in 2018, and obtaining his Master License HVAC Qualification in 2022. (See Defense Exhibit # 11).

In October of 2017 Levelle also successfully completed the Texas Online Adjuster Pre-Licensing Course to become a certified home adjuster. (See Defense Exhibit #12). Despite being

licensed, he could not find a job as an adjuster because of his prior felony conviction.

Levelle's faith has always been a large part of his life. Levelle turned his attention to writing and helping others in 2015, publishing a book titled "Goodness of God," about his experience with God (See Defense Exhibit # 13). In February of 2022, Levelle decided he wanted to assist other men and counsel them with alcohol and substance abuse issues. On August 12, 2022, Levelle became a certified Adult Peer Support Specialist. (See Defense Exhibit # 14). And on October 9, 2023, he accepted a position with Addiction Recovery Care (ARC) as a Peer Support Specialist. (See Exhibit # 15).

The history of Levelle would not be complete without a discussion of his alcohol and substance abuse history. As mentioned, Levelle started abusing alcohol at the age of thirteen (13), while still in middle school. By the age of nineteen (19) he had moved on to cocaine and crack cocaine, which led him to a life of crime and eventually to prison. After his religious experience in November of 1996, Levelle has fought hard to stay sober. Without question he has relapsed multiple times through the years. While staying sober from 2000 to 2008, he eventually relapsed again later and has been in and out of treatment. Levelle has now been sober since 6/15/21. He attends Alcoholics Anonymous (AA) at least five (5) days a week and is fully committed to his continued sobriety and success.

**(c) <u>Pretrial Supervision Without Any Violation</u>**

As of the filing of this memo, Levelle has not had a single pre-trial supervision violation. He has been completely cooperative with Probation and Parole, with his attorney, with the Court, and has demonstrated his ability to follow all rules placed upon him. This Honorable Court graciously allowed Levelle to stay out of custody pending sentencing, to which he is thankful. In doing so, the Court allowed Levelle to continue to demonstrate he is a law-abiding citizen

worthy of a variance. The events that led to this case occurred in March and April of 2020, almost four (4) years ago. Since that time Levelle has not had a single violation of the law. The PSR even notes: "Pretrial services records indicate the defendant has complied with all Court-ordered conditions of release as he has made all scheduled court appearances; reported to pretrial services as directed; and has tested negatively for all controlled substance." ***PSR at 5:10***. It should be further noted he never violated any conditions of his bond in the companion state court case either.

**(d) Community Ties and Responsibilities**

Levelle has strong community ties to the city of Louisville. He was born and raised here, and has lived here most of his life. He has strong family ties as well, including his wife of thirty-two (32) years, Jennifer, five (5) children (Kimberly (31), Michael (27), Moriah (23), Jayna (19), Cole (17)), and six (6) grandchildren, with one (1) on the way.

**(e) Prior Criminal History**

Levelle's only criminal conviction before the instant offense occurred over thirty (30) years ago on November 6, 1993. After that time, Levelle has had zero criminal convictions up until the present offense. And he has had no violations of the law since originally being charged in state court on April 15, 2020. "Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to reoffend." ***U.S. v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005)***. This same logic applies to Levelle. Without question, any prison sentence for him, no matter how short, will have a much greater impact than an individual who has continually reoffended.

**(f) THE KINDS OF SENTENCES AVAILABLE (§ 3553(a)(3))**

This Honorable Court has the authority under ***Booker*** to impose any sentence it finds satisfies the statutory sentencing requirements imposed by Congress. ***Booker, 125 S. Ct. at 756***. As it stands from the PSR, Levelle is facing a 24–30-month sentence. Levelle respectfully requests this Honorable Court strongly take into consideration the factors discussed above which make him an excellent candidate for a variance.

### III.     SPECIAL REQUESTS

**(a) FEDERAL BUREAU OF PRISONS HOUSING REFERRAL**

Levelle respectfully requests if he is sent to serve this sentence that he be sent to a Federal Prison Camp (FPC).

**(b) SELF-SURRENDER IF SENTENCED TO PRISON**

If this Court finds a term of imprisonment necessary, Levelle respectfully requests this Honorable Court to allow him to voluntary surrender. Prisoners are classified by the BOP according to procedures set forth in the U.S. Department of Justice, Bureau of Prisons, Program Statement P5100.08 (Sept. 2006). Custody classification is a procedure whereby an inmate is assigned a level of supervision according to their criminal history and institutional behavior/adjustment. An inmate's custody level is an indication of how much staff supervision an inmate requires within and beyond the confines of the institution. If allowed to voluntary surrender, the custody classification guidelines would allow for the subtraction of three points from the Security Point Total, ultimately lowering the Defendant's Custody Classification Level. U.S. Department of Justice, Bureau of Prisons, Program Statement P5100.08 (Sept. 2006), Chapter 6, Page 8. Counsel is not aware of prior bench warrants for failures to appear for court, or anything in his past that would indicate Levelle would not show up as ordered by this

Honorable Court to begin serving a prison sentence. He's shown up to every state court appearance on time and prepared, has always made himself available to counsel to discuss the case, and always shown up in the present case on time and prepared.

## **CONCLUSION**

Levelle takes full responsibility for his actions, accepts whatever consequences this Honorable Court deems appropriate, and apologizes to all those involved who had to take the time to investigate, prosecute, and preside over this case. Levelle requests the Court consider that the offense in this case happened almost four (4) years. It happened at a time of uncertainty and fear in our country. This does not excuse Levelle's behavior, but it does serve as an explanation why a man who went over twenty-five (25) years without a bit of trouble suddenly found himself on the wrong side of the law. The undersigned prays this Court will consider all law and arguments supplied herein for an appropriate sentence.

**WHEREFORE**, the undersigned respectfully asks this Honorable Court to consider the law and arguments supplied herein, as part of Levelle's Sentencing Hearing.

Respectfully submitted,

/s/ NICK MUDD

_____
NICK MUDD
Attorney for Levelle O'Bannon
MUDD LEGAL GROUP, PLLC
600 W Main St
Suite 300
Louisville, Kentucky 40202
(502) 795-2529

**CERTIFICATE OF SERVICE**

 I hereby certify that a copy of the foregoing motion was filed on Tuesday, February 20, 2024, with service to all counselors of record, via ECF.

         /s/ NICK MUDD

         _____
         NICK MUDD
         Attorney for Defendant Levelle O'Bannon